# The Status of the Smithsonian Institution Under the Federal Property and Administrative Services Act

The Smithsonian Institution is an "independent establishment in the executive branch" and is therefore an "executive agency" for purposes of the Federal Property and Administrative Services Act.

June 30, 1988

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
GENERAL SERVICES ADMINISTRATION

## Introduction and Summary

You have asked for the opinion of this Office concerning the status of the Smithsonian Institution. In particular, you are interested in the status of the Smithsonian under the Federal Property and Administrative Services Act ("Property Act" or "Act"), 40 U.S.C. §§ 471–544, and under the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. I, §§ 1–15, both of which are administered by the General Services Administration ("GSA"). For the reasons stated below, we conclude that the unique nature of the Smithsonian counsels in favor of determining the status of the Smithsonian on a statute-by-statute basis. In this instance, we adhere to our prior opinion that the Smithsonian is not covered by the FACA, and we conclude that the Smithsonian is an "executive agency" within the meaning of the Property Act.

## Background

The Smithsonian Institution is "an establishment . . . for the increase and diffusion of knowledge among men." 20 U.S.C. § 41. Congress founded the Smithsonian in 1846 to accomplish the purposes of a bequest to the United States by James Smithson, an English scholar and scientist. The original bequest is now supplemented by private donations and congressional appropriations in financing the activities of the Smithsonian. These activities include the operation of numerous museums, the sponsorship of research, and the direction of educational and other public service programs. A Board of Regents composed of the Vice President, the Chief Justice, six Members of Congress, and nine other persons appointed by Congress conducts the business of the Smithsonian. 20 U.S.C. §§ 42–43.

122

The Smithsonian Institution has long been regarded as having a special relationship to the federal government. The precise nature of that relationship, however, is the subject of some disagreement. The Smithsonian perceives itself as "not a government agency in any ordinary use of the term, but [as] a charitable trust for the benefit of humankind whose trustee is the United States. As such, it cannot carry out the functions of any of the three branches of government, but must be devoted exclusively to its educational and scientific purposes 'for the increase and diffusion of knowledge among men.'" Letter for Douglas W. Kmiec, Deputy Assistant Attorney General, Office of Legal Counsel, from Peter G. Powers, General Counsel, Smithsonian Institution at 1 (Apr. 10, 1987) (quoting 20 U.S.C. § 41) ("Powers Letter"). The Smithsonian further relates that "the Smithson charitable trust is not part of the government itself. The basic legal nature of the Institution as a unique trust instrumentality of the United States separate from the three main branches of government has not been altered by the fact that the government has chosen to support the trust with substantial appropriations and Federal property, largely in response to major benefactions and collections from the private sector." *Id.* at 5.

Chief Justice Taft, speaking as Chancellor of the Smithsonian Board of Regents, also asserted "that the Smithsonian Institution is not, and never has been considered a government bureau. It is a private institution under the guardianship of the Government." Taft, "The Smithsonian Institution—Parent of American Science" 16, *quoted in* Memorandum for Peter Powers, General Counsel, the Smithsonian Institution, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel at 8 (Feb. 19, 1976) ("Ulman Memorandum"). At least in some instances, though, the Smithsonian is covered by federal statutes that are applicable to certain instrumentalities of the United States. *See, e.g., Expeditions Unlimited Aquatic Enters., Inc. v. Smithsonian Inst.*, 566 F.2d 289, 296 (D.C. Cir. 1977) (Smithsonian is a federal agency for purposes of the Federal Tort Claims Act), *cert. denied*, 438 U.S. 915 (1978); 45 Comp. Gen. 685, 688 (1966) (the use of funds appropriated to the Smithsonian must be in accordance with federal law).

The Office has previously described the Smithsonian Institution as a "historical and legal anomaly," Memorandum for the Attorney General, from Theodore B. Olson, Assistant Attorney General at 1 (May 23, 1983), "a very unusual entity," *id.*, "*sui generis*", 3 Op. O.L.C. 274, 277 (1979), and "unique unto its own terms," Ulman Memorandum at 9. We have said that the Smithsonian enjoys an "anomalous position in the Government," Memorandum for Drew S. Days, III, Assistant Attorney General, Civil Rights Division, from Leon Ulman, Deputy Assistant Attorney General at 2 (Mar. 20, 1978), and a "unique status in the eyes of the Supreme Court," Letter for Robert H. Simmons, from Robert B. Shanks, Deputy Assistant Attorney General at 3 (Feb. 13, 1984). In short, "the hybrid and anomalous character of the Smithsonian Institution is proverbial." Memorandum for Fred F. Fielding, Counsel to the President, from Theodore B. Olson, Assistant Attorney General at 8 (Aug. 8, 1983).

The unique nature of the Smithsonian counsels reluctance toward a sweeping

declaration of the Smithsonian's status within the federal government. The wiser course, which we and others have followed, is to focus upon the position of the Smithsonian within a precise statutory scheme. We therefore limit our advice to the status of the Smithsonian under the specific statute—the Property Act—in which you are interested.

## Analysis

As you are aware, this Office has previously advised that the Smithsonian is not covered by the FACA. In the Ulman Memorandum, *supra*, we considered the status of the Smithsonian under the FACA, the Administrative Procedure Act ("APA"), and the Privacy Act. Under the FACA, "[t]he term 'agency' has the same meaning as in" the Administrative Procedure Act. 5 U.S.C. app. I, § 3(3). The APA, in turn, defines "agency" as "each authority of the Government of the United States" except for Congress, the courts, territorial governments, the District of Columbia government, and certain military authorities. 5 U.S.C. § 551(1). Applying this definition to the Smithsonian, we observed that "[t]he Smithsonian performs none of the purely operational functions of government which have been given such significant weight in determinations of agency status in other cases." Ulman Memorandum at 10. Moreover, "[t]he nature of the Smithsonian Institution is so widely different from the kinds of agencies otherwise included that it is apparent Congress could not have intended to place it [under] the same category." *Id.* at 5. Therefore, we advised, the Smithsonian is not an "agency" within the meaning of the APA and FACA definition. *Id.* at 10.[1] Your request suggests no basis to re-examine our previous opinion that the FACA does not apply to the Smithsonian Institution.

The Property Act establishes procedures for the management of governmental property. The Act applies to "executive agencies" and to "federal agencies." These terms are defined in section 3 of the Act as follows:

> (a) The term "executive agency" means any executive department or independent establishment in the executive branch of the Government, including any wholly owned Government corporation.

> (b) The term "Federal agency" means any executive agency or any establishment in the legislative or judicial branch of the Government (except the Senate, the House of Representatives, and the Architect of the Capitol and any activities under his direction).

---

[1] In the Ulman Memorandum, we also suggested that it appears from the legislative history of the APA definition of "agency" that the term applies only to entities within the executive branch. Ulman Memorandum at 2–5. We then said that the Smithsonian "cannot be viewed as an establishment within the Executive branch of government." *Id.* at 10. However, we stressed that the nature of the Smithsonian in comparison to the nature of agencies covered by the definition provides "a still more compelling argument" for our conclusion that the Smithsonian is not covered by the APA definition of agency. *Id.* at 5. We agree that the unique nature of the Smithsonian is decisive to resolve the present issue of statutory interpretation, and for the reasons stated above, we express no opinion on whether the Smithsonian could be considered to be in the executive branch for any other purpose.

40 U.S.C. § 472. You believe that the Smithsonian is an "independent establish-ment in the executive branch" and thus an "executive agency".[2] The Smithson-ian considers itself to be a "Federal agency" but not an executive agency.

Congress did not expressly specify the status of the Smithsonian under the Property Act. Nor does the legislative history of the Property Act elaborate on the definitions of "executive agency" and "Federal agency" contained in the Act. *See* H.R. Rep. No. 670, 81st Cong., 1st Sess. 8 (1949), *reprinted in* 1949 U.S.C.C.A.N. 1475, 1481–82 (section-by-section analysis of section 3 does not discuss these definitions). Moreover, unlike those instances in which Congress has specified the status of an entity for the purpose of federal law, *e.g.*, 39 U.S.C. § 201 (the United States Postal Service is "an independent establishment of the executive branch of the Government of the United States"); 31 U.S.C. § 9101(2) (listing ten "mixed-ownership Government corporation[s]"), Congress has not specified the general status of the Smithsonian. Thus, we must determine whether Congress intended the Property Act to apply to the Smithsonian at all, and if so, whether Congress intended the Smithsonian to be treated as an "executive agency" or as a "Federal agency" for the purposes of the Act.

The GSA and the Smithsonian both assert that the Property Act applies to the Smithsonian. *See* Letter for Charles J. Cooper, Assistant Attorney General, Of-fice of Legal Counsel, from Clyde C. Pearce, Jr., General Counsel, GSA at 3–5 (Oct. 27, 1986); Powers Letter at 10–12. The legislative history of the Act sup-ports this conclusion.[3] Indeed, it has long been understood that transactions with the Smithsonian involving federal property or appropriated funds are subject to federal property and contract law. *See, e.g.*, Act of Dec. 30, 1982, Pub. L. No. 97–394, 96 Stat. 1966, 1991–92 (1982) (provisions for appropriations to the Smithsonian presume the applicability of the procurement provisions of the Prop-erty Act); 45 Comp. Gen. at 686–88; 12 Comp. Gen. 317 (1932). We therefore agree that the Property Act does apply to the Smithsonian.

As to whether Congress intended the Smithsonian to be treated as an "execu-tive agency" or as a "Federal agency" for the purposes of the Property Act, we

---

[2] The GSA has held this position since 1952. *See* Op. Gen. Couns No. 39 (Oct. 13, 1952) (GSA No. 53–10011).

[3] Two aspects of the passage of the Property Act suggest that Congress intended the act to apply to the Smith-sonian. First, as discussed more fully below, the Property Act replaced federal property sale and exchange author-ity that had previously been granted to the Smithsonian. Second, Congress relied upon the recently published rec-ommendations of the Hoover Commission on Organization of the Executive Branch of the Government in drafting the Property Act in 1949. *See, e g ,* H R Rep. No. 670, at 3–5, *reprinted in* 1949 U.S C.C.A.N. at 1476–78; 95 Cong Rec. 7441 (1949) (statement of Rep. Hohfield). In turn, the Hoover Commission's report on the manage-ment of the property, supplies, and records of the federal government anticipated that federal property law should apply to the Smithsonian. For example, the Commission proposed the creation of the General Services Adminis-tration and recommended the placement of "[c]ertain relations with the Smithsonian Institution" in that agency. 1 U.S. Commission on Organization of the Executive Branch of the Government, *Office of General Services: A Re-port to the Congress by the Commission on Organization of the Executive Branch of the Government, February 1949* at 5 (1949) ("Office of General Services Report"), *quoted in* H.R. Rep. No. 670, 81st Cong., 1st Sess., pt. 2, at 2 (1949). The report also recommended that "when [the Smithsonian's] officials need assistance from the Chief Executive or the departments, it is recommended that they consult with the Director of the Office of General Ser-vices." Office of General Services Report at 12. Thus, the Hoover Commission recognized the Smithsonian's need to deal with the federal government regarding property transactions.

believe that the best evidence the Smithsonian is an "executive agency" is that the Property Act repealed the Smithsonian's prior statutory authority for certain property exchanges and replaced it with a provision applicable only to executive agencies. The Act of Mar. 3, 1915, ch. 75, 38 Stat. 822, 838–39 (1915), provided specific exchange and sale authority to the Smithsonian. Section 502(a)(19) of the Property Act repealed the 1915 act and a number of other provisions that had granted similar authority to other agencies and substituted general sale and exchange authority for executive agencies. As a 1956 analysis prepared by GSA and printed by the Senate Committee on Government Operations observed, section 201(c)

> authorizes executive agencies to exchange or sell personal property and apply the trade-in allowance or proceeds of sale in whole or part payment for property acquired. This is an expansion of authority given under a number of previous statutes to specific agencies or with respect to specific types of property. While these statutes are repealed by section 602[sic](a)(8) to (28), the language here is intended to be sufficiently broad to preserve all such existing authority.

Senate Comm. on Government Operations, 85th Cong., 2d Sess., *Federal Property and Administrative Services Act of 1949, As Amended* 22 (Comm. Print 1959). *See also* H.R. Rep. No. 670, at 28, *reprinted in* 1949 U.S.C.C.A.N. at 1504 (section 502(a) of the Property Act repeals "some 20 statutes relating to use of trade-in allowances which will be superseded by section 201(e)[sic]").[4] Section 201(c) applies to "any executive agency"—it does not apply to a "Federal agency."[5] Therefore, because the Smithsonian's previous authority for sales and

---

[4] The House report's reference to section 201(e), rather than section 201(c), appears to be a mistake. The House report describes the repeal of "statutes relating to use of trade-in allowances which will be superseded by section 201(e)." H.R. Rep. No. 670, at 28, *reprinted in* 1949 U.S.C.C.A.N. at 1504. Section 201(e), however, governs the transfer of medical materials and supplies held for national emergency purposes. 40 U.S.C. § 481(e). It is section 201(c) that governs exchange allowances. 40 U.S.C. § 481(c). The analysis of section 201(c) in the House report confirms that section 201(c) preserves the existing statutory authority repealed by section 502(a). H.R. Rep No. 670, at 12, *reprinted in* 1949 U.S C.C A.N. at 1486.

[5] The Smithsonian denies that section 201(c) applies only to executive agencies. Powers Letter at 11–12. We disagree. Including several different provisions for the sale and exchange of government property, section 201 carefully distinguishes between different types of agencies: subsection (a) refers to executive agencies; subsection (b) refers to "any other Federal agency" than those in subsection (a), mixed ownership corporations, and the District of Columbia; subsection (c) refers to "any executive agency", subsection (d) refers to executive agencies; and subsection (e) refers to executive agencies and any other federal agencies. 40 U S C. § 481 In short, different types of agencies enjoy different authority under the Act. The Smithsonian's contention that "executive agency" in section 201(c) is "not restrictive or exclusive," Powers Letter at 12, disregards the distinction within section 201 and the legislative history of that section. *See* H.R. Rep No 670, at 11, *reprinted in* 1949 U.S.C C.A.N. at 1486 (paraphrasing "federal agency" in section 201(b) as "the legislative and judicial branches, and mixed-ownership corporations"). When the Property Act repealed the Smithsonian's specific sale and exchange authority but "preserve[d] all such existing authority" of executive agencies under section 201(c), Congress must have considered the Smithsonian an executive agency for purposes of the Act.

exchanges is superseded by a provision that applies only to executive agencies, we conclude that Congress must have intended the Smithsonian to be considered an executive agency for the purposes of the Property Act.[6]

## Conclusion

For the reasons stated herein, and solely for the purposes of the Federal Property and Administrative Services Act, we conclude that the Smithsonian Institution is an "independent establishment in the executive branch" as Congress intended the term to be construed.

DOUGLAS W. KMIEC
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[6] President Truman considered the Smithsonian an "executive agency" for the purposes of the Property Act at the time of the act's passage in 1949 On the day after the Property Act was approved, President Truman sent a letter "To All Executive Agencies" concerning the implementation of the act. 14 Fed. Reg. 3699 (1949). The letter described the responsibilities of "Executive agencies" under the Property Act. *Id* at 3701 The President sent a copy of the letter to the Smithsonian, thereby indicating the contemporaneous executive branch interpretation of "executive agency" as including the Smithsonian. *See* Letter for John Nagle, Office of Legal Counsel, Department of Justice, from Benedict K. Zobrist, Director, Harry S. Truman Library (May 13, 1988) (confirming President Truman sent the letter to the Smithsonian) Although this letter may not be determinative of the congressional intent in enacting the Property Act, it does suggest that our conclusion that the Smithsonian is an "executive agency" was hardly a novel interpretation even at a time contemporary with the Act's enactment *See generally* Frank B. Cross, *The Constitutional Legitimacy and Significance of Presidential "Signing Statements"*, 40 Admin. L. Rev. 209, 232 (1988) (suggesting that "[j]udicial deference to contemporaneous statutory constructions . . . provides reason for ascribing importance to the [contemporary] views expressed [by the president]").